# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

**RONALD RYAN SHEPARD,**
    Petitioner,

        v.                          CASE NUMBER: 1:04-CR-01-SPM/AK
                                                      1:06-CV-228-SPM-AK
**UNITED STATES OF AMERICA,**
    Respondent.
_____/

## GOVERNMENT'S ANSWER TO DEFENDANT'S MOTION
## TO VACATE, SET ASIDE, OR CORRECT SENTENCE
## PURSUANT TO 28 U.S.C. § 2255

**COMES NOW THE UNITED STATES OF AMERICA,** by and through the undersigned Assistant United States Attorney, and files this answer pursuant to court order dated December 1, 2006, in response to defendant's Motion to Vacate, Set Aside, or Correct Sentence. The government hereby moves this Court to deny the defendant's motion based on the following grounds:

**I.**     **STATEMENT OF CASE**

**A.**     **Proceedings and Defendant's Use of Other Federal Remedies**

On March 3, 2004, the Grand Jury for the Northern District of Florida returned a superseding indictment charging Defendant/Appellant Ronald Ryan Shepard ("Defendant") with ten counts of wire fraud, in violation of Title 18, United States Code, Section 1343. (Doc 19) Following a jury trial, Defendant was found guilty of six counts and not guilty of the remaining

four counts. (Doc 62) The jury found the loss attributable to Defendant was $256,000, reflecting $176,000 suffered by Joey P. Patterson ("Patterson") and $89,000 suffered by Richard Hall, Jr. ("Hall"). (Doc 61) However, the combination of the two victims' losses found by the jury exceeded the total loss amount found by the jury. On December 13, 2004, Defendant was sentenced to concurrent sentences of 57 months on each count. (Docs 93, 97).

Defendant filed a timely notice of appeal. (Doc 94) The appeal was based on three claims of error by the district court. First, the Defendant claimed that the district court erroneously admitted evidence of other acts, under Federal Rule of Evidence 404(b). Second, the Defendant claimed that the evidence presented at trial was insufficient to support the verdict. Third, the Defendant claimed that the district court erred when it enhanced his sentence for the use of sophisticated means and denied a downward departure.

On November 17, 2005, the Eleventh Circuit Court of Appeals denied all of Defendant's claims and affirmed his judgment and sentence. United States v. Ronald Shepard, 154 Fed. Appx. 849 (11th Cir. 2005). No petition for writ of certiorari was filed, and Defendant's conviction became final 90 days after the entry of judgment on direct appeal. See Clay v. United States, 537 U.S. 522, 532 (2003).

On October 31, 2006, Defendant filed a timely Motion to Vacate, Set Aside, or Correct Sentence. (Doc 128) No prior motion has been filed or evidentiary hearing held pursuant to Title 28, United States Code, Section 2255.

**B.** **Statement of Facts**

    **i.** **Defendant Defrauded Richard Hall, Jr.**

**COUNTS SEVEN, NINE AND TEN [COUNTS FIVE THROUGH SEVEN OF THE REDACTED INDICTMENT]**

Beginning in approximately July 1999, at Trenton, Florida, Defendant began doing business as Ron Shepard Cattle Company, a division of Tennessee Dressed Beef Company [TDBC] of Nashville, Tennessee. (Doc 111 - Pgs 53-62; Doc 112 - Pgs 17-35, 168) Hall, owner of TDBC, agreed to pay Defendant $1,000 per week to buy and sell cattle for TDBC, and they would split the profits. (Doc 111 - Pgs 62-66; Doc 112 - Pgs 18, 106, 112) In approximately March 2000, Hall discovered Defendant had diverted cattle into his own name and for private sale, kept the proceeds and telefaxed phony invoices reflecting purported sales of cattle. (Doc 111 - Pg 66; Doc 112 - Pgs 19-39, 67, 95-97, 112-13, 128-31, 135-40, 153-62)

Defendant also placed some of TDBC's cattle in a holding facility, financed the cattle for 75% of their value, and retained the equity value of the cattle. (Doc 112 - Pgs 102-06, 149-51) Defendant directed his secretary to create two sets of invoices as well as fictitious invoices to conceal the fraud and theft. (Id. at 92-94, 179-81) Defendant kept the full proceeds of the sale of certain cattle. (Id. at 102-03, 189)

Defendant faxed invoices to Hall/TDBC reflecting that the buyers were to pay TDBC, while collecting the monies himself without authorization. (Doc 111 - Pg 62; Doc 112 - Pgs 18-19) Defendant faxed invoices to Hall/TDBC that reflected either a smaller amount owed by a buyer or a greater amount owed to a seller than the amount actually owed. (Doc 111 - Pg 66-67) Defendant repeatedly sold TDBC's cattle to Martin Meats under his own name and kept the money. (Id. at 69-70; Doc 112 - Pgs 27-30; Exhibit 8) Defendant faxed an invoice to Hall/TDBC reflecting the sale of 13 head of cattle to Larson Dairy, yet the sale never occurred. (Doc 111 - Pgs 70-73; Exhibits 7, 7A-B) Fifty-six head of TDBC's cattle which Defendant reported as sold to San Angelo Feed Yard were actually yarded at San Angelo while Defendant represented full ownership and obtained 70% financing totaling $18,906.00. (Id. at 77-81; Doc

3

112 - Pgs 22-26; Exhibits 2, 2A-D, 3) Another 23 head of TDBC's cattle were invoiced as being sold to San Angelo Feed, but the transactions never occurred. (Doc 112 - Pg 25) Defendant kept $1,490,578.60 from the sale of TDBC cattle. (Doc 112 - Pg 33)

Defendant's financial records could not be reconciled with the records sent to Hall. (Id. at 190-93) Hall estimated his loss at one million to 1.2 million dollars, and the limit of his insurance policy was $250,000. (Id. at 42-43, 81) An FBI financial analyst estimated Hall's loss - conservatively - at approximately $537,256.78. (Id. at 181-82) The probation officer concurred. (PSR, para. 26)

### ii. Defendant Defrauded Joey P. Patterson

**COUNTS ELEVEN THROUGH THIRTEEN [COUNTS EIGHT THROUGH TEN OF THE REDACTED INDICTMENT]**

In April 22, 2001, Defendant, in Trenton, Florida, and Patterson, in Dumas, Texas, created WesTex Cattle Company. (Doc 112 - Pgs 228, 238) They agreed that Defendant would buy and sell cattle, Patterson would provide financing, and they would split the profits. (Id. at 228-35)

Between April and July 2001, Defendant faxed invoices which falsely reported the purchase and sale of cattle and also diverted monies belonging to Patterson/WesTex into his own bank account. (Doc 112 - Pgs 237-49; Doc 113 - Pg 26; Exhs. 19, 20, 22)

Patterson paid approximately $48,000 for the purchase of cattle, which turned out to be non-existent. (Doc 113 - Pg 29) Some money was missing and a $47,000 check from Defendant to Patterson bounced. (Id. at 22-24, 32; Exh. 24) Defendant claimed the problems were due to a customer getting the best of him. (Id. at 35-40) Defendant told Patterson that customers were failing to pay. (Doc 112 - Pg 249)

4

In faxed communications, Defendant admitted owing Patterson $177,428.24 and offered to pay monthly restitution. (Id. at 32-33; Exh. 25A) Defendant made only one partial restitution payment. (Id. at 35-40) Patterson estimated that Defendant owed him $174,000. (Id. at 40) The probation officer determined that Patterson's losses totaled $145,362.33. (PSR, para. 26)

On October 24, 2002, Defendant told law enforcement he could not remember his business dealings because he had been off his medication. (Doc 113 - Pg 79)

### iii. Defendant's Sentencing

Over Defendant's objections, the sentencing court imposed a two level enhancement under USSG, Section 2B1.1(b)(8)©, for sophisticated means. (Doc 115 - Pg 12; PSR, paras. 37, 128, 129) The court found,

> the defendant utilized falsely created invoices and fictitious buyers in order to perpetrate offenses against victims located as far away as Tennessee and Texas. He kept two sets of invoices, sending the altered ones to customers to show purported sales or purchases of cattle. In addition, the defendant placed cattle in holding facilities and claimed ownership of the animals in order to secure loan advances for various names. The defendant financed the cattle at 75 percent of their market value and pocketed the remaining twenty-five percent.

(Doc 115 - Pg 13)

The court denied Defendant's motion for a downward departure based upon diminished capacity pursuant to USSG, Section 5K2.13. (Id.; PSR, paras. 130, 131) The court explained,

> [f]or purposes of Section 5K2.13, significantly reduced mental capacity means that the defendant has significantly impaired ability to understand the wrongness of the illegal conduct to exercise the power of reason or to control behavior that the defendant knows is wrongful. Here, although the defendant was diagnosed with bipolar disorder after a suicide attempt, records indicate that he benefited from psychotherapy and functioned well with medication. His last two evaluations indicated no significant problems. In fact, they determined that he was not in need of mental health treatment or medication. I find that the defendant was well aware of the wrongfulness of his behavior and chose not to control that wrongful behavior.

(Doc 115 - Pgs 13-14)

5

Defendant's Sentencing Guideline range was 46 to 57 months, and he was sentenced to 57 months on each count, to run concurrent. (Docs 93, 97; PSR, para. 110)

## II.  DEFENDANT'S CLAIMS

Defendant's 2255 motion is based on four (4) separate claims. Each claim is addressed in the order presented by the following response and memorandum of law.

## III.  GOVERNMENT'S RESPONSE AND MEMORANDUM OF LAW

### A.  Legal Standards

#### i.  Procedural Default

Under the procedural default rule, a defendant must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a §2255 proceeding. McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001); Jones v. United States, 153 F.3d 1305, 1307 (11th Cir. 1998); Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994); Greene v. United States, 880 F.2d 1299, 1305 (11th Cir. 1989). This rule generally applies to all claims, including constitutional claims. See Reed v. Farley, 512 U.S. 339, 354 (1994) ("Where the petitioner--whether a state or federal prisoner--failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." (internal quotation marks, punctuation, and citations omitted)); see also Wainwright v. Sykes, 433 U.S. 72, 84 (1977) (applying cause and prejudice standard to constitutional claims).[1]

---

[1] In Massaro v. United States, the Supreme Court reaffirmed that "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." 538 U.S. 500, 504 (2003). However, the Massaro Court excepted ineffective-assistance-of-counsel claims from the general procedural default rule. Id. at 509 (noting that a §2255 motion is preferable to direct appeal for deciding claims of ineffective assistance of counsel and that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under §2255"). The Massaro Court established that "[t]he procedural default rule is neither a statutory

A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error. Bousley v. United States, 523 U.S. 614, 622 (1998); Mills, 36 F.3d at 1055; Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990); Greene, 880 F.2d at 1305; Martorana v. United States, 873 F.2d 283, 284 (11th Cir. 1989); Parks v. United States, 832 F.2d 1244, 1246 (11th Cir. 1987). Under the second exception, a court may allow a defendant to proceed with a §2255 motion despite his failure to show cause for procedural default if "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Mills, 36 F.3d at 1055 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)); see also Bousley, 523 U.S. at 622; Jones, 153 F.3d at 1307.

In this case, it is easy to dispense with the second narrow exception because there is no evidence establishing that the Defendant is actually innocent.[22] Thus, the focus is on whether the Defendant has shown cause and prejudice for not raising his §2255 claims on direct appeal.

### ii. Cause and Prejudice for Procedural Default

In procedural default cases, the question is not whether legal developments or new evidence have made a claim easier or better, but whether at the time of the direct appeal the claim was available at all. See Smith v. Murray, 477 U.S. 527, 534 (1986); McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992); Lomelo v. United States, 891 F.2d 1512, 1515 (11th Cir.

---

nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id. at 504.

[22]"This exception is exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir.2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray v. Carrier, 477 U.S. at 495-96). "'[A]ctual innocence' means factual innocence, not mere legal innocence." Bousley, 523 U.S. at 623.

1990).³ Further, to show cause for procedural default, Defendant must show that some objective factor external to the defense prevented Defendant or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to Defendant's own conduct. Smith v. Jones, 256 F.3d 1135, 1145 (11th Cir.2001) (noting "that 'the existence of cause⁴ for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule'" and to raise the claim previously (quoting Murray v. Carrier, 477 U.S. at 488)); Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001); McCoy, 953 F.2d at 1258.⁵

In some circumstances, the existence of "cause" for a procedural default can be demonstrated through ineffective assistance of counsel. See Black v. United States, 373 F.3d 1140, 1147 (11th Cir. 2004). In this case, the Defendant attempts to overcome the procedural bar to all his claims with a blanket allegation of ineffective assistance of counsel.

### iii. Ineffective Assistance of Trial Counsel

The Sixth Amendment right to counsel is the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim

---

³Perceived futility of a claim does not constitute cause for procedural default. Smith, 477 U.S. at 535-36. "Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." McCleskey v. Zant, 499 U.S. 467, 498 (1991). As stated in Lomelo, "[i]n determining whether cause exists, the Supreme Court has held that the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was available at all." 891 F.2d at 1515 (internal quotations and citation omitted).

⁴ "[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim." Id. at 492.

⁵As stated in Lomelo, 891 F.2d at 1515 n. 9, "[t]he 'cause and actual prejudice' standard for federal habeas petitions mirrors the standard used to evaluate collateral attacks on state convictions." Thus, at times in our "cause" analysis, we look to both §2254 and §2255 cases.

of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland v. Washington, 466 U.S. 668, 688 (1984); see also Boykins v. Wainwright, 737 F.2d 1539, 1542 (11th Cir. 1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of the effective assistance of counsel. United States v. Cronic, 466 U.S. 648, 658 (1984). Ineffectiveness of counsel may be grounds for vacating a conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. Strickland, 466 U.S. at 687, 694. "There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. Thus, if the defendant fails to show that he is prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. See Coulter v. Herring, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).[5]

For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. See Strickland, 466 U.S. at 690. In other words, when reviewing counsel's decisions, "the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1311 (11th Cir. 2000)(*en banc*)(quoting

---

[5] "'[T]hat the error had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (quoting Strickland, 466 U.S. at 692); see also Tompkins v. Moore, 193 F.3d 1327, 1336 (11th Cir.1999). "Instead, Petitioner must show: 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (quoting Strickland, 466 U.S. at 694; see also Glock v. Moore, 195 F.3d 625, 635-36 (11th Cir.1999).

9

Burger v. Kemp, 483 U.S. 776 (1987)), cert. denied 531 U.S. 1204 (2001). Furthermore, "[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." Id. (citing Strickland, 466 U.S. at 688). This burden of persuasion, though not insurmountable, is a heavy one. See id. at 1314 (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)).

"'Judicial scrutiny of counsel's performance must be highly deferential,' and courts must avoid second-guessing counsel's performance." Id. at 1314 (quoting Strickland, 466 U.S. at 689). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Id. (quoting Strickland, 466 U.S. at 689-90). Thus, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.'" Id. (quoting Darden v. Wainwright, 477 U.S. 168 (1986)).

If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. See id. at 1314-15 n.15. Therefore, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." Id. Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." Id. Moreover, "[t]he reasonableness of a counsel's performance is an objective inquiry." Id. at 1315. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action his counsel did take." Id. To uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes

10

underlying the strategy." Id. at 1315 n.16. Finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." Id. at 1317.

B.    **Defendant's Four Claims**

   i.    **Hall's Bank Records**

Defendant argues that his trial counsel, Assistant Federal Public Defender Thomas Miller, was ineffective for failing to seek and obtain Hall's bank records because they "would have been useful at trial." (Doc 128 - Pg 4). Defendant asserts that "production of Hall's bank records would have caused a different result at trial ..." (Id.) For factual support of this argument, defendant relies entirely on a 43 page Affidavit prepared by the Federal Public Defender's investigator, Patricia Gallo. (Hereafter Affidavit). This argument fails on the merits and as a matter of law.

First, the Defendant cannot impeach the performance of his trial counsel through the trial counsel's investigator. A review of the investigator's affidavit reveals she determined Hall's bank records might be relevant months prior to trial. (Affidavit at Pg 6). The investigator states she contacted John Smith, an accountant, and "Smith advised me at that time that without Richard Hall's official bank records, an audit could not be conducted."(Id.) If the defense did not have the bank records they identified prior to trial, and felt they were a necessary part of the defense, they could have subpoenaed the records. See, Rule 17, Federal Rules of Criminal Procedure. Failure to obtain Hall's bank records was a tactical decision made prior to trial by the defense.

To prevail on his ineffective-assistance-of-counsel claim, Defendant must show that by failing to obtain the bank records, his trial counsel rendered a deficient performance during trial and that Defendant was prejudiced such that there is a reasonable probability that, but for the

attorney's decision not to introduce the records, the result of the proceeding would have been different. Strickland, 466 U.S. at 687. Defendant has not made this requisite showing. The defense counsel's tactical decision not to use Hall's bank records was not outside the wide range of professional competence that is given to trial counsel. Id. at 690. Given the heavy burden that the Defendant must overcome to show that his trial counsel's performance was deficient, in conjunction with the strong presumption that counsel's performance was reasonable unless specific facts are shown to dispute the presumption, this claim fails. Chandler, 218 F.3d at 1314.

"Counsel will not be deemed unconstitutionally deficient because of tactical decisions." McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir.1984) (citations omitted); Crawford, 311 F.3d at 1312 ("Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client. In this regard, this court will not substitute its judgment for that of trial counsel." (quotation marks, internal alteration, and citation omitted)). There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy. Rogers, 13 F.3d at 386; see also Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir.2004), cert. denied, 544 U.S. 952, 125 S.Ct. 1703, 161 L.Ed.2d 531 (2005). "The presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." Callahan v. Campbell, 427 F.3d 897, 933 (11th Cir.2005).

To overcome this presumption, the petitioner "must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir.2000) (en banc) (footnote and citation omitted). Under this standard, there are no "absolute rules" dictating what reasonable performance is or what line of defense must be asserted. Id. at 1317. Indeed, as we have recognized, "[a]bsolute rules would interfere with

counsel's independence--which is also constitutionally protected--and would restrict the wide latitude counsel have in making tactical decisions." Putman v. Head, 268 F.3d 1223, 1244 (11th Cir.2001).

Although it is not necessary to disprove that the Defendant was prejudiced once it is shown that his counsel was not deficient, the Defendant fails to prove prejudice as well. Strickland, 466 U.S. at 697. To prove that counsel's error prejudiced the Defendant, he has to show that there is a reasonable probability, which would undermine confidence in the outcome of the trial, that the outcome of the trial would have been different if Defendant's trial counsel had introduced Hall's bank records. Gilreath, 234 F.3d at 551. The Defendant has not made this showing.

The Affidavit upon which Defendant relies goes far beyond Hall's bank records - it is the investigator's characterization of testimony and evidence. The Affidavit includes numerous transactions, many of which have nothing to do with Hall's bank records. Perhaps more importantly, the bank records have no relevance to the fraud Defendant committed upon Patterson. The Defendant ignores the fact he was convicted for victimizing two persons in a common scheme.

Even if Hall's bank records had been introduced, and that was enough to produce a different result on the charges against Defendant for fraud committed upon Hall, Defendant would still be liable for the fraud that he committed upon Patterson. Since Defendant was given the same 57 month sentence for each fraudulent scheme to run concurrent, Defendant would still be imprisoned for 57 months even if he was only convicted for the crimes against Patterson. (Doc 93) Consequently, Defendant was not prejudiced in any way by counsel's tactical decision

not to introduce Hall's bank records because Defendant has not proffered evidence to show that there is a reasonable probability that the result of his case would have been different.

Defendant Shepard also mis-characterizes the significance of Hall's testimony. For example, in addition to Hall's testimony, the government presented testimony of a federal agent that Shepard confessed to the underlying crimes against Hall. Shepard admitted that he initially lied to the FBI, he routinely prepared fictitious invoices for Hall, he lied about Hall's use of cash sales to conceal income, and he would sell Hall's cattle and keep the money for himself. (Doc 113 - Pgs 123-128) The government also presented the testimony of another eyewitness, Wendy Woods. Ms. Woods testified that Shepard would direct her to prepare and send bogus invoices and other documents related to Shepard's purchases of cattle to Richard Hall. (Doc 112 - Pgs 92-93, 102-103) She testified that Shepard maintained other sets of records relating to his cattle purchases/sales that Hall never saw and that Shepard did not want him to see. (Doc 112 - Pgs 103,105) She stated that in some instances, Shepard was having customers pay him directly for cattle they had purchased instead of sending their payments to Hall's company as they were supposed to. (Doc 112 - Pgs 102, 104-105) She confirmed that shortly before Hall stopped doing business with Shepard, Hall came to Florida and examined the books and conducted a compete inventory of the cattle and became extremely upset when he discovered Shepard's theft by collecting money for sales himself. (Doc 112 - Pgs 95-96, 105)

###    ii.    **Alleged *Brady* Violation**

Defendant argues that the government deprived him of the Fifth and Fourteenth Amendment due process of law, by violating Brady v. Maryland, 373 U.S. 83 (1963), because the government did not seek Hall's bank records. This argument is procedurally barred and fails on the merits. This issue is barred because it was not raised by Defendant's trial or appellate

counsel. The defendant cannot overcome a procedural default, for the purpose of a motion to vacate, unless he can demonstrate a cause for the default and show actual prejudice suffered as a result of the alleged error. United States v. Montano, 398 F.3d 1276 (11th Cir. 2005). Defendant has failed to demonstrate cause or prejudice and his claim is procedurally barred.

Defendant has also failed to establish a claim on the merits. To succeed on a Brady claim on direct appeal, a defendant must show that: (1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. United States v. Hansen, 262 F.3d 1217, 1234 (11th Cir. 2001). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

In the case at bar, the F.B.I. did not possess the bank records that the Defendant wanted the government to seek, which fails prong one of the above test. Moreover, defense counsel's investigator identified the records before trial, which means the defense could have obtained the records with any reasonable diligence and prong two of the above test fails. (See Investigator Gallo's Affidavit) Further, there is no evidence to suggest that the prosecution suppressed Hall's bank records, especially since the Defendant claims that the F.B.I., or the federal prosecutor, did not seek such bank records. The government cannot suppress evidence it does not possess, and Defendant cannot establish a Brady violation based on speculation. Finally, the Defendant has not proffered any evidence to show that such records would have undermined confidence in the outcome of the trial. Although the government needs to disprove only one of the above prongs

15

to show that Defendant's Brady claim fails, it is clear that Defendant has not proven any of the above prongs. Therefore, Defendant's alleged Brady violation fails on the merits.

### iii. Failure to Investigate Hall's Involvement in a Different Scheme

Defendant argues his constitutional rights were violated because the government should have done a better job of investigating Hall, and had they done so, they would have uncovered evidence that the victim, Hall, was involved in a fraudulent scheme against the State of Mississippi. After Defendant Shepard was convicted and sentenced, Richard Hall, Jr. was charged by Information in the Northern District of Mississippi, Case #3:06cr23-B. Defendant Shepard argues that if the government had investigated Hall's bank records, they might have discovered earlier that Hall was committing fraud on the State of Mississippi, and that discovery might have changed the outcome of Shepard's case. Whether this claim of failure to investigate is made against the government or Shepard's trial counsel, the conclusion is simply too far removed.

The Eleventh Circuit Court of Appeals has determined that the "government presented ample evidence that [Defendant] intentionally and successfully defrauded his business partners, and . . . used faxes, sent interstate, in the course of his scheme." United States v. Ronald Shepard, ___ Fed. Appx., 6 (11th Cir. 2005). Moreover, Defendant perpetrated his fraud against Hall from July 1999 until August 2002. However, according to the Information filed against him, Hall's fraud against the State of Mississippi only commenced in 2002. Therefore, Hall's fraud against Mississippi, which occurred after the Defendant had already defrauded Hall, was a completely unrelated and separate crime from that of the Defendant's fraud upon Hall.

Additionally, trial counsel's alleged failure to explore the theory that Hall was actually orchestrating the fraud and was not a victim of the fraud is not sufficient grounds for a Sixth

Amendment claim. "(C)ounsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers." Lovett v. State of Florida, 627 F.2d 706, 708 (5th Cir. 1981); United States v. Hughes, 635 F.2d 449, 453 (5th Cir. 1981). Consequently, Defendant has failed to demonstrate any harm, or that his trial counsel was ineffective, so as to overcome the procedural bar to raising this issue in this collateral attack of his sentence.

    **iv.**    **Failure to Sever Claims Against Defendant**

Defendant further argues that his Fifth and Fourteenth Amendment rights were violated because the trial court did not sever the claims against Defendant for defrauding Hall and Patterson. Moreover, Defendant argues that his trial counsel was ineffective for failing to object to the joining of these claims. However, this argument is barred by procedural default.

No objection was raised on these grounds at trial or on direct appeal. Under these circumstances, the issue is procedurally barred. Defendant cannot overcome a procedural default, for the purpose of a motion to vacate, unless he can demonstrate a cause for the default and show actual prejudice suffered as a result of the alleged error. United States v. Montano, 398 F.3d 1276 (11th Cir. 2005). Defendant has failed to demonstrate cause or prejudice and his claim is procedurally barred. Additionally, without addressing the merits of the argument, defense counsel cannot be deemed "ineffective" for failing to object to a longstanding and established judicial procedure.

Defendant speculates that most of the evidence presented during trial pertained to Hall's fraud and that a separate trial for the Patterson charges would have resulted in a different verdict. However, as noted in the previous section of this memorandum, the appellate court determined that there was sufficient evidence to prove the fraud charges that Defendant committed upon both Hall and Patterson. Therefore, Defendant has not proffered any evidence to demonstrate

17

that there is a reasonable probability that the verdicts for the charges of fraud that Defendant committed upon Hall and Patterson would have been different if the claims were separated into two distinct trials. As a result, since the Defendant did not object on these grounds during trial or on direct appeal, Defendant has waived his right to appeal this issue on a Section 2255 motion.

### IV.    STATEMENT ON EVIDENTIARY HEARING

The defendant has the burden of establishing the need for an evidentiary hearing. Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984) (*en banc*), cert. denied, 469 U.S. 874 (1984). The threshold test for determining if the defendant has met this burden is "whether the defendant's allegations, if proved, would establish the right to 'habeas relief.'" Birt, 725 F.2d at 591; Futch v. Dugger, 874 F.2d 1483 (11th Cir. 1989); Cronnon v. Alabama, 587 F.2d 246, 249 (5th Cir. 1979), cert. denied, 440 U.S. 974 (1979).

"Under Rules Governing Section 2255 Cases, Rule 4(b), a district court faced with a §2255 motion may make an order for its summary dismissal '[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]'" Broadwater v. United States, 292 F.3d 1302, 1303 (11th Cir. 2002) (quoting 28 U.S.C. §2255). Accordingly, no hearing is required when the record establishes that a Section 2255 claim lacks merit, see United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984), or that it is defaulted, see McClesky v. Zant, 499 U.S. 467, 494 (1991). A hearing is not required on patently frivolous claims. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989). A hearing is not required when the defendant's allegations of fact supporting his claims are conclusory and not supported by the record, demonstrated merit less, that is, "affirmatively

18

contradicted" by the files and record, or wholly incredible. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Humphrey v. United States, 888 F.2d 1546 (11th Cir. 1989).

A defendant should not be accorded an evidentiary hearing when defendant's allegations of fact, even if true, would not warrant relief. Holmes, 876 F.2d at 1553 (hearing not required on patently frivolous claims). In addition, no evidentiary hearing is necessary when the record conclusively refutes the defendant's allegation in a Section 2255 petition. Politte v. United States, 852 F.2d 924, 931 (7th Cir. 1988); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1985), cert. denied, 479 U.S. 1017 (1986); 28 U.S.C. § 2255. The district court can use its knowledge and recollection of the entire proceedings in deciding whether an evidentiary hearing is necessary. United States v. Polselli, 747 F.2d 356, 358 (6th Cir. 1984), cert. denied, 469 U.S. 1196 (1985). Further, when the issues raised are purely legal, no evidentiary hearing is required. Forrester v. United States, 456 F.2d 905, 907 (5th Cir. 1972) cert. denied, 409 U.S. 856 (1972). In specific regard to a claim of ineffective assistance of counsel, an evidentiary hearing is required only if the factual allegations, if true, would meet both prongs of Strickland v. Washington, 466 U.S. 668 (1984).

## V. CONCLUSION

The defendant has failed to demonstrate grounds for reversal of his conviction or remand for re-sentencing. He has failed to demonstrate the United States violated his constitutional rights. He has failed to establish that his trial counsel was ineffective, or that counsel's performance prejudiced him in any way.

WHEREFORE, the United States of America requests this Court to deny the defendant's Section 2255 Motion without an evidentiary hearing.

        Respectfully submitted,

        GREGORY R. MILLER
        United States Attorney

        *s/ F. T. Williams*
        F. T. WILLIAMS
        Assistant United States Attorney
        Northern District of Florida
        Florida Bar No. 936219
        300 East University A$^{ve}$., Suite 310
        Gainesville, Florida 32601
        (352) 378-0996

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been forwarded by the electronic court filing system this 2nd day of February, 2007 to Stephen N. Bernstein, Attorney for Defendant Shepard.

        *s/ F. T. Williams*
        F. T. WILLIAMS
        Assistant United States Attorney