IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                              CASE NO. 1:04-cr-1-SPM-AK

RONALD RYAN SHEPARD, JR.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on Defendant's amended motion to vacate.  Doc. 146.  The

Government has filed responses, Docs. 134 & 158, and Defendant has filed replies.  Docs. 135 &

159.[1]  This cause is therefore in a posture for decision.[2]  Having carefully considered the matter,

the Court recommends that the amended motion to vacate be denied.

## BACKGROUND

Defendant was indicted on multiple counts of wire fraud occurring from July, 1999,

through August, 2002.  Doc. 19.  After certain counts were dismissed based on a scrivener's

error, Doc. 47, the case proceeded to trial, and the jury convicted Defendant of six counts and

acquitted him of four counts.  Doc. 62.  In a special verdict, the jury assessed the total amount of

---

[1]Rather than filing a full response to the amended motion to vacate, the Government
merely supplemented its original response, incorporating by reference the arguments it had
originally advanced.

[2]There are two motion related to bond which have not been referred to the undersigned
for decision and are not affected by this R&R.  *See* Docs. 148 & 150.

loss at $256,000.00, attributing $176,000 of the loss to "J. Patterson," and $89,000, to "R. Hall."[3]

*Id*. In a second special verdict, the jury found that Defendant did not obstruct justice. *Id*.

During trial, Defendant was represented by Thomas Miller; present counsel, Stephen

Bernstein, entered a formal notice of appearance on September 29, 2004, after the Court granted

the substitution of counsel. Docs. 74 & 76.

Mr. Bernstein filed two objections to the Presentence Report (PSR) on Defendant's

behalf: (1) he objected to a two-level increase for using "sophisticated means" for carrying out

the offenses, and (2) he objected to the failure of the PSR to recognize Defendant's diminished

capacity. Doc. 78. The Court overruled Defendant's objections and sentenced him to 57 months

on each count, to run concurrently. Docs. 93 & 97. It later found that the Supreme Court's

decision in *Booker* did not change the judgment. Doc. 102. Defendant appealed, and the full

transcripts of the trial and sentencing were filed on February 28, 2005.[4] Docs. 111-115.

On appeal, Defendant raised three claims: (1) that the Court erred in admitting evidence

of other acts under Fed. R. Evid. 404(b); (2) that there was insufficient evidence to support the

verdict; and (3) that the Court erred in enhancing Defendant's sentence for use of sophisticated

means and in denying the downward departure for diminished capacity. Doc. 126.

As to the first issue, Defendant argued that the Court erroneously admitted business

records and financial statements which contained evidence regarding offenses not charged in the

superseding indictment. *Id*. The Eleventh Circuit rejected that argument, finding, "All of the

---

[3]Obviously, the sums do not add up.

[4]Transcripts of the testimony of Richard Hall had previously been filed shortly before Mr. Bernstein undertook Defendant's representation. Docs. 69 & 70.

records of which Sheppard complains involved conduct that arose out of the same series of

transactions as the charged offense, were necessary to complete the story, were inextricably

intertwined with the evidence, and were not unduly prejudicial." *Id.*

As to the second claim, Defendant argued that the Court improperly denied his motion

for judgment of acquittal because the evidence was insufficient to support the convictions, as it

"did not prove his intent to defraud because Hall and Patterson had a duty to verify the truth of

Sheppard's assertions to them." *Id.* The court of appeals also rejected this argument, concluding

that the Government "presented ample evidence that Sheppard intentionally and successfully

defrauded his business partners, and Sheppard used faxes, sent interstate, in the course of his

scheme." *Id.*

Finally, Defendant argued that the Court improperly applied the Sentencing Guidelines.

*Id.* The Eleventh Circuit found that because Defendant's "scheme involved the use of duplicate,

altered, and fictitious invoices to defraud his business partners," it could not say that the

enhancement for use of sophisticated means was clearly erroneous. *Id.* It also found that it was

without jurisdiction to review the Court's refusal to downwardly depart for diminished capacity,

since in refusing the departure, the Court itself had recognized its authority to depart. *Id.*

In closing, the court found that Defendant had waived any argument "regarding the error

of the district court when it sentenced Sheppard under a mandatory system of guidelines...." *Id.*

In the amended motion to vacate, Defendant claims that trial counsel, Mr. Miller, was

ineffective because he "never confronted the business records of the alleged victim, Richard

Hall, by seeking his disclosure of his bank records even though it was Mr. Hall's business

documentation and personal testimony that formed the basis of the prosecution's case...." Doc.

146. According to Defendant, Hall later pled guilty of defrauding the State of Mississippi "by falsifying his business records, urging family and friends to claim compensation for work never done in order to defraud the State using fake invoices...and billing...for equipment that he never even purchased." *Id.* In Defendant's view, if counsel had sought and obtained Hall's bank records, they would have substantiated his defense that "it was Mr. Hall who orchestrated the creation and utilization of false documents in the case at bar and not the Movant." *Id.* According to Defendant, after trial he "discovered that Richard Hall employed a pattern of double invoicing in his own records to show that the Movant owed him money when in fact, payments were credited elsewhere in his own records." *Id.* "These matters were not reflected in F.B.I. summaries used at trial because they were based solely on Mr. Hall's records without any comparison to bank records." *Id.* Defendant also maintains that the bank records show that Hall testified falsely during trial and that "the bookkeeping system was designed by Hall to manipulate figures." *Id.*

Defendant also charges that Mr. Miller was ineffective when he failed to seek the severance of the counts involving Hall from the counts involving Patterson. *Id.* According to Defendant because the majority of the evidence presented at trial involved Hall and that the "scheme was made by Mr. Hall," who was not a victim, if the other counts had been severed, there is a "strong likelihood of a change in the verdict." *Id.*

Defendant further complains that he was denied due process based on the investigators' failure to obtain Hall's bank records. *Id.* According to Defendant, if the FBI or other agencies "had properly investigated Mr. Hall, they would have discovered the fraud that was being perpetrated in the State of Mississippi...and such information would have been available at the

time of trial of the Movant."  *Id.*

Finally, raising "a recently discovered serious legal defect in the sentencing judgment," Defendant contends that because he was sentenced under the wrong Sentencing Guidelines, his term of imprisonment was improperly calculated.  *Id.*  He also claims that the failure to recognize this defect is attributable to sentencing and appellate counsel's ineffectiveness, the same attorney now representing Defendant in this instant motion, as Defendant was the one who discovered a date variance between trial testimony and the superseding indictment.

In response, the Government argues that counsel's failure to obtain Hall's bank records was a "tactical decision made prior to trial," Doc. 134, but that even if counsel erred in that regard, Defendant  "ignores the fact that he was convicted for victimizing two persons in a common scheme" and that Hall's bank records "have no relevance to the fraud Defendant committed upon Patterson."  *Id.*  "Since Defendant was given the same 57 month sentence for each fraudulent scheme to run concurrent, Defendant would still be imprisoned for 57 months even if he was only convicted for the crimes against Patterson."  *Id.*  The Government also maintains that Defendant has mischaracterized the importance of Hall's testimony since there were other government witnesses to support the charges against Defendant.  *Id.*

## DISCUSSION

Because most of Defendant's claims raise the issue of counsel's effectiveness, a review of  *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at

686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at 689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions."  *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy."  *Chandler*, 218 F.3d at 1315 n.16.

"No lawyer can be expected to have considered all of the ways [to provide effective assistance]."

*Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

The two-part *Strickland* test is "applicable to ineffective-assistance claims arising out of the plea process," the only difference being that in the context of a plea, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "[T]he decision whether to plead guilty (i.e., waive trial) rest[s] with the defendant, and...counsel's

advice...might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled." *Roe*, 528 U.S. at 485. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001). Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

1.      Failure to secure Hall's bank records.

As previously noted, in this claim, Defendant charges that Mr. Miller's failure to secure Hall's actual bank records was deficient performance which prejudiced him at trial. The Court does not agree, as there was sufficient evidence of Defendant's fraudulent actions to support the jury's guilty verdicts. As the trial transcripts reflect, Defendant admitted to the FBI that he had indeed created false invoices without Hall's knowledge, that he routinely prepared and submitted fictitious invoices to Hall, and that he kept moneys intended for Hall for himself without telling Hall. Doc. 113 at 127-28. There was also evidence presented by the person who, at Defendant's

directions, actually created the two sets invoices and books and directly witnessed Defendant keeping payments for himself that were intended for Hall. Doc. 112 at 91-106. While the Court is not beyond assuming that the bank records would have impeached Hall's testimony and shown him also to be engaged in criminal activity, they would not have lessened the impact that these witnesses had. Furthermore, even if Defendant had been able to show through Hall's bank records that he, not Defendant, was the mastermind behind his actions, Defendant would not have been exonerated as to his conduct against Patterson, and he would have been sentenced to 57 months on each of the Patterson counts in any event. Thus, even if counsel should have secured the bank records themselves, Defendant was not prejudiced by this failure.

      2.      Failure to move for severance.

      In this claim, Defendant maintains that because the charges involving Hall should have been severed from the charges involving Patterson, Mr. Miller was ineffective in failing to request a severance pursuant to Fed. R. Crim. P. 14. Having carefully considered the matter, the Court finds that counsel did not act deficiently in failing to move for a severance, as a motion to sever was not legally or factually warranted. To secure a severance of charges in an indictment, a defendant must establish (1) that joinder of the charges in the indictment was not proper and (2) that even if joinder was initially proper, he will be prejudiced by their continued joinder for trial to such an extent that the court can offer no protection. *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993). The second inquiry requires the court to assess whether under all the circumstances, the jury can follow limiting instructions and can appraise the evidence against the defendant on each count separately. *Id*. at 386-87. It cannot seriously be disputed that the charges were properly joined in the indictment under Fed. R. Crim. P. 8(a), as it permits joinder

of offenses "if the offenses charged...are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The counts involving Hall and the counts involving Patterson charged actions by Defendant which were of the "same or similar character" and were "parts of a common scheme or plan" to defraud others in the livestock business. Furthermore, it is clear that Defendant was not prejudiced by the joinder of the charges because the jury in fact found him not guilty on four counts which "demonstrates that the jury instructions offered sufficient protection against prejudice and that the jury considered each count separately." *United States v. Galdos*, 308 Fed. Appx. 346, 358 (11th Cir. 2009). An attorney never acts deficiently in failing to file a motion which is frivolous. A motion to sever would have been frivolous in this case.

      3.       Failure of the Government to produce Hall's bank records.

      To the extent that Defendant claims that the Government violated *Brady* by failing to produce Hall's bank records, the claim is without merit. As noted in the investigator's affidavit, the defense was aware of the existence of the bank records and could have requested them on their own. The Government did not suppress the bank records or attempt to prevent Defendant from securing those records himself; it simply chose, for whatever reason, not to secure them as a part of its investigation. Where there is no government suppression of evidence, there is no violation of *Brady*.

      4.       Use of the wrong Guidelines.

      This claim likewise fails. First, it is plainly untimely, though the Government did not raise its untimeliness as a defense to the claim, as it does not relate back to the claims made in the original motion. *See Pruitt v. United States*, 274 F.3d 1315, 1318 (11th Cir. 2001);

*Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). Second, the claim is now

moot, as Defendant has been released from prison. *See* www.bop.gov. Third, the claim is

without merit, as the evidence showed that even after Patterson ceased doing business with

Defendant, he continued to seek payment of the money Defendant owed him, and Defendant

continued to offer excuses for non-payment, thereby extending the life of the fraudulent scheme

further.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's amended

motion to vacate, Doc. 146, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this *28th* day of July, 2009.

*s/ A. KORNBLUM*
ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.